## East St. Louis & Suburban Railway Company v. Louis F. Zink.

1. EVIDENCE—*when not admissible as introducing a collateral issue. Held,* that evidence was competent to show that a car which had caused the injury of the plaintiff by jumping the track, had previously jumped the track of the defendant at different places along its right of way.

2. INSTRUCTION—*effect of use of phrase "if you believe from the evidence."* The use of the phrase "if you believe from the evidence," instead of the phrase "if you believe from a preponderance of the evidence," does not constitute prejudicial error.

3. INSTRUCTIONS—*how to be construed.* Instructions are to be considered as a series and the omissions of one may be supplied by the contents of another.

4. INSTRUCTIONS—*need not repeat same proposition of law.* Correct instructions which repeat propositions of law stated to the jury in other instructions given, may properly be refused.

Action in case for personal injuries. Appeal from the Circuit Court of St. Clair County; the Hon. R. D. W. HOLDER, Judge, presiding. Heard in this court at the August term, 1906. Affirmed. Opinion filed March 15, 1907.

SCHAEFER & FARMER, for appellant.

WEBB & WEBB, for appellee.

MR. JUSTICE HIGBEE delivered the opinion of the court.

This was a suit originally brought against appellant and the East St. Louis Railway Company, to recover damages alleged to have been sustained by appellee, by reason of the negligence of appellant. There was afterwards an amended declaration filed, containing nine counts. Appellant filed a plea of the general issue and a special plea of the Statute of Limitations. To the latter a demurrer was sustained, and appellant stood by its plea, and went to trial. After all the

evidence was in, the court instructed the jury to return a verdict of not guilty, as to counts 2, 3, 4, 5, and 6. Appellee thereupon dismissed the suit as to the East St. Louis Railway Company. The jury found for appellee on the eighth and ninth counts and fixed his damages at $6,000, for which amount judgment was afterwards rendered.

Appellant here complains of errors in the admission of evidence and in the instructions and asserts that the verdict is not sustained by the evidence. As the verdict was based specifically on the alleged negligence set out in counts 8 and 9, it is unnecessary to consider the other counts.

The negligence alleged in the eighth count was that appellant carelessly and negligently operated a certain car, the gauge of which was too narrow for the tracks of its railway, rendering the car liable to leave the tracks, of which defendants had or might have had notice; that appellee boarded a certain car of appellant, to be carried to Belleville and was received as a passenger on said car; that while riding on the car, near the city limts of the city of East St. Louis, the conductor informed him he must change cars, and ordered and directed him to go and wait at a certain station of appellant, used by the public in waiting for cars, for the coming and leaving of a certain other car, going to the city of Belleville; that while so waiting in said station, without notice of any defect in any of the cars and while in the exercise of due care, said car, by reason of defects, ran off the track at said station upon plaintiff and injured him.

The ninth alleged that plaintiff was in the city of East St. Louis and was received as a passenger upon appellant's car, to be carried to the city of Belleville; that he was ordered to wait at a certain station for another car, and while so waiting in the exercise of due care and caution for his own safety, appellant through its agents and servants, carelessly and negligently drove and operated a certain car so that it ran off the track against the waiting room or station, and plaintiff was thereby injured.

The proofs showed that at the time of the accident and prior thereto, appellant operated a system of interurban cars,

from East St. Louis to Belleville in this State, and also a system of street cars in the city of East St. Louis; that until late in the year 1902, the car sheds for the interurban cars were located about half way between the two places, but at that time car sheds were built within the city about a mile from the easterly limits and both city and interurban cars were run into these sheds. From the east end of what is known as the Eads Bridge, connecting East St. Louis with St. Louis, Missouri, to the car sheds, both the city and interurban cars ran over the same tracks. The car sheds were located some 300 feet south of State street, and consisted of a large brick building, where there was a restaurant and a waiting room for conductors and motormen, which could also be used by the public. From State street there was also a "Y" which led onto the track running to the sheds, and by means of that track, connected with many tracks fan-shaped, running into the sheds. About forty feet south of the street on the west side of the shed track, and just south of the frog, where the cars left the " Y," the company had built a shed about 15 feet long north and south and 10 feet wide east and west. The west side was inclosed while the rest was open towards the shed track. It was built upon a platform nearly a foot high, which extended to about 4½ feet of the nearest rail of the shed track. All these buildings were on the property of and controlled by the company. This building was erected and used by the company as a place to keep sand used on the cars and here electric headlights and colored danger signals were kept, tested and cleaned. The interurban cars were operated between the two cities from 5 o'clock in the morning, until midnight, the last car for Belleville leaving the Eads Bridge at midnight. All the cars were turned in at the sheds by 1:15 A. M. and then an employee's work car left the sheds for Belleville to carry conductors and motormen, who lived in Belleville and had brought in the cars, to their homes.

As to whether this work or employees' car was permitted by appellant to carry passengers or not, is a contested point. That it did as a matter of fact carry passengers, is not de-

9

nied, but it is claimed by appellant that this was contrary to authority. The general manager of the company, on November 4, 1902, posted a bulletin which it is claimed by appellant covered the matter. It contained this provision: "Commencing November 5, 1902, the employees' car, barring accidents and unnecessary delays, will leave the power station for East St. Louis as soon as the last employee using this car has made his return. Car will not be allowed to stop anywhere longer than is actually necessary to take on and let off employees and will not be allowed to handle passengers at all." It is to be noted however that this bulletin was posted before the car sheds had been moved from the place on the line where they were formerly located to East St. Louis, and it is therefore contended by appellee that the rule did not apply to the changed conditions.

A witness for appellee, a former conductor, testified, proper foundation for his testimony having been laid, that after the change was made and before appellee was injured there was a bulletin posted in the new shed, stating in substance that " passengers desiring to go to Belleville, who have missed the last regular car leaving East St. Louis, at 12 o'clock, conductors are instructed to carry them to the car sheds and collect their fares, and tell them to wait for the employees' car, which will take them to Belleville." It was also shown by appellee that a great many passengers did take the city car after the last interurban had left, to go as far as the sheds, and then took the employees' car to Belleville or points along the way; that when they got to the small shed they would get off and wait for the employees' car and not go down to the car shed; that when the car reached the place to turn in on the main line about 30 feet from the small shed, the conductors in many instances told passengers to get off and wait for the employees' car and they were permitted to wait at the small shed by the employees of the road.

On September 6, 1903, Louis F. Zink, 32 years of age, single and by trade a molder, earning from $3.00 to $3.50 a day, left Belleville late in the afternoon and went to St. Louis, where he attended the theatre. He got back to the

East St. Louis side of the river a little after midnight, and took an interurban car, a little later, for home.   There were some 7 or 8 passengers on the same car going on beyond the car sheds, all of whom, including appellee, paid their fares and were given transfers.   Appellee swore that when they arrived at the place where the car turned into the sheds, the conductor said "Get out here, you will have to wait for the car to take the employees back"; that when the passengers got out they found about a dozen people in and about the small shed waiting for the employees' car; that appellee sat down on the corner of the platform of the shed, with one foot towards the shed track; that while in this position three cars passed him; that as the fourth car was passing at a slow speed, the back end left the track, swerved around toward the platform, struck appellee's leg and so injured it that amputation was afterwards necessary.

It was claimed by the motorman that he sounded the gong and warned appellee as he approached him and that appellee motioned to him to come on; but appellee, while admitting that he heard the gong sounded, denied that he had any other warning or motioned the motorman to come on, and it was shown that it was the custom for the gongs of all the cars to be sounded at that place.

Appellant claims that the court erred in permitting appellee to prove, over the objection of appellant, that other cars, prior to the time of the injury, had left the track at the point in question, without first establishing the condition of the track, the condition of the car which ran off the track and the manner in which it was operated, all at the time of the injury.   Without discussing the question whether this evidence was, in itself, admissible or not, it is only necessary to say that it was introduced in support of the seventh count of appellee's declaration, which charged negligence in the construction and manner of maintenance of the track at the point in question, and upon this count the jury found in favor of appellant, so that the evidence, even if improperly admitted, could not have injured appellant.   Appellant also says that the court erred in permitting appellee to prove that

the car which injured appellee, had jumped the track the same night at different places in the city of East St. Louis, and in support of this objection cites C., B. & Q. R. R. Co. v. Lee, 60 Ill., 501, to the effect, that from the fact of the omission to ring the bell on the locomotive engine, at a previous time, no reasonable inference can be drawn that it was not rung on the occasion in controversy, and other causes of the same import.

The evidence in question was admitted in support of the eighth count of the declaration, which alleged that the gauge was too narrow for the tracks of the railway, and that such defect rendered the car liable to leave the track, and was properly received for that purpose. A further objection to the admission of evidence is, that the court improperly permitted appellee to prove statements of conductors at various times, to passengers who were too late for the through car to Belleville, instructing them to get off at the place where appellee was injured and wait, and it is said that while it might be competent to prove what the conductor told appellee on the night in question, it was not proper to admit evidence of what was said at different times by various conductors on that subject. We think the evidence was admissible as tending to show that appellant knew or might, by the exercise of reasonable care have known, that its employees were charging through fares from the city and permitting passengers to ride upon the work car. If appellant knew or in the exercise of reasonable care might have known, that this was being done and was reaping the benefit thereof, it was not in a position afterwards to deny that its employees had the right to collect these fares and permit passengers to wait at the place in question and take the employees' or work car.

Only two instructions were given on behalf of appellee. Appellant complains of the first for the reason that it uses the language, "If you believe from the evidence" instead of "If you believe from a preponderance of the evidence." While the instruction is objectionable in the feature named by appellant, yet that would not warrant a reversal of the case for the reason that in other instructions the jury were

E. St. L. & S. Ry. Co. v. Zink.

plainly told that appellee must prove his case by a preponderance of the evidence, and it is not necessary that this should be repeated in every instruction. T., M. & N. Ry. Co. v. Haws, 194 Ill., 92; Mitchell v. Hindman, 150 Ill., 538 (47 Ill. App., 431).

It is also said that the instruction was erroneous in that it did not require the jury to find from the evidence that the appellee was at the time of the injury, a passenger. The instruction however tells the jury that if they believe from the evidence that appellee " desired passage to Belleville on the cars of the defendant and that he boarded one of the cars of the defendant in said city (East St. Louis) and was received on said car by the conductor there, as a passenger and paid fare to the conductor thereof, to be carried on said car," etc., and this would seem to dispose of appellant's objection without further comment.

The second instruction given for appellee stated, "the court instructs the jury that if from the greater weight of all the evidence in the case, you believe and find that the plaintiff, Louis F. Zink, was injured and sustained damages, as charged in his declaration, or in some one count thereof, then it will be your duty to find the issues in his favor, and assess his damages" following with a statement of the rule of law in regard to damages.

The first objection made to this instruction by appellant is that it requires the finding of the jury to be based upon the evidence, without directing any consideration of the instructions. In support of this contention appellant cites C. & A. R. R. Co. v. McDonnell, 194 Ill., 82. In that case however the Supreme Court, while criticising the instruction, refused to reverse the case, on account of the alleged defect. In this case the most that can be said on the subject is that the instruction was incomplete, but this was remedied by another instruction, which told the jury that it must look to the evidence for the facts, and to the instructions of the court for the law of the case, and find their verdict accordingly.

If the instruction taken as a whole presents the law to the jury, with substantial correctness, it is sufficient. T., M.

& N. Ry. Co. v. Haws, *supra*; Day v. Porter, 161 Ill., 235; City of Macon v. Halcomb, 109 Ill. App., 135.

We do not think the above instruction is subject to the next objection made by appellant, that it permits a recovery irrespective of the question whether appellant was guilty of the negligence charged in the declaration, or whether or not appellee was in the exercise of due care. But even if that were true, what is said in reference to the preceding objection to the same instruction, will apply equally to this.

Appellant also complains that instructions Nos. 21 and 22 offered by it, which told the jury, that if they believed from the evidence appellee at the time of his injury, was not a passenger of the defendant company, but was a trespasser upon its premises, they should find the company not guilty, were refused by the court. These instructions stated correct principles of law and the court would not have erred in giving them, but they were fully covered by instruction No. 3 given for appellant, which was as follows: "The court instructs the jury that if you believe from the evidence that the plaintiff at the time of the injury, was not a passenger of the defendant company, and that at the time of his injury he was a trespasser on the premises of the company, then said East St. Louis and Suburban Railway Company owed the plaintiff, Louis F. Zink, no duty except not to wilfully injure him." As the subject was so well covered it was not error for the court to refuse to give additional instructions covering the same point and to the same effect.

Upon the question of fact, the evidence clearly shows that appellee had been received by appellant as a through passenger from East St. Louis to Belleville, and that he was told by the conductor to get out of the car with the others at the place where he was injured, and to take the work car to Belleville; that appellant's employees were accustomed to permit passengers to wait at the small shed for the work train and that they did so that night; that appellant either knew of this custom or could by the exercise of ordinary care, have known it; that at the time appellee was injured, he was a passenger and that appellant then owed him the duty it

owed to passengers upon its cars. The question whether under all the circumstances of the case, the appellant was guilty of the negligence charged in the eighth and ninth counts of the declaration, as well as the question whether appellee was at the time of his injury in the exercise of ordinary care, for his own safety, were questions of fact for the jury.

The court below appears to us to have committed no error affecting the rights of appellant in the trial of the cause and the evidence strongly tended to support the verdict rendered by the jury.

We are therefore of opinion that the judgment of the court below should be, and it accordingly is affirmed.

*Affirmed.*